I think we're ready to proceed, Ms. Pruitt. Thank you. Good morning, Your Honor. In a very strongly worded decision, the District Court found this case exceptional under the prior and more restrictive Brooks Furniture Standard, and the Court found it exceptional by clear and convincing evidence. This Court has stated that the aim of Section 285 is to compensate a party for attorney's fees it should not have been forced to incur. Section 1927 is also aimed at compensation. So what exactly is the standard of review here? I mean, she found exceptional. You're not challenging the finding of exceptional case. No. So you're challenging just her subsequent decision as to how much or whether or not to award fees, right? And is that abuse of discretion? That is abuse of discretion, Your Honor. After finding the case exceptional, after writing 19 pages detailing the extreme litigation misconduct that led her to find the case exceptional, and also laying out findings of fact that showed the case was completely unsupported from the start, that showed that the tactics reflected bad faith, she just declined to award any amount of fees. Well, she didn't. I mean, this isn't, as you heard in the earlier argument, if you were here, in one of our instances on sanctions, there was no analysis by the Court at all. In this instance, the Court did point to several reasons why she didn't award fees, right? Including that there might have been some questionable conduct on the side, including that this could have ended sooner if the O.H. had done more investigation or some action early on, right? I mean, am I wrong about that, that she did kind of point to reasons why she thought the award of fees would not be proper here? Well, let me be very clear about this. She did not identify any conduct by Vizio that was questionable. Oh, sure she did. She said the fact that Vizio basically sat on the fact that they weren't making the product for so long is part of what allowed the litigation to keep going on, and may have actually, you know, been the same timeframe in which some of this litigation misconduct was going on. Well, let me address that, Your Honor, and we do address this in our reply brief. First of all, that was incorrect. At the very first scheduling conference before Judge Falzer, I personally told Judge Falzer and the Court, after, Oakland's counsel said, you know, in response to the Court's question, Oakland's counsel said, we don't know whether these products are still on sale, but you know, in the television industry, technology moves very quickly. New TVs every six months. That is, in fact, true, and if Oakland's counsel had looked at the Vizio website, they would have known that none of the televisions they accused were still on sale. But as soon as they said that, I responded, all of these products have changed. These are televisions from a few years ago. The district court forgot that. Oakland's counsel took advantage of her mistake and glommed onto it in their opposing brief. But in fact, there are two things that are true about this. One, they absolutely knew those TVs had been discontinued, and two, we told them in July 2012. But that's an underlying factual finding, and there's nothing from the record other than what you're telling us, because I assume that that first conference was not on the record. It is in the record, and it's in the appendix. Yeah, it definitely is in the record. Do you want us to listen to it? I think it's on page 14. Yes, on page 14 of our recovery, we repeat the July 2012 portion of the transcript where Oakland's counsel states that- Is the transcript in the appendix? Yes, it is. Where? It's at A140. A140. Yes, and at A153. There are two parts. There's Oakland's counsel's discussion where they say there's new TVs every six months. We can't be sure that these TVs are still on sale. And then there's my response, which is on page 15 of our recovery, where I confirm the products have changed because these are TVs from a few years ago. All right, but the trial court went beyond just that issue. Didn't the trial court say that there were generally delays on both sides? The trial court said that, but without any explanation of how there were delays on both sides. And the court acknowledges one of the problems that we have with the district court's decision, and I think this is apparent when you read it, is that she goes on for about 17 pages detailing all of the things that Opelous and his counsel did, that they brought a baseless case. They never supported it with any evidence. They harassed Vizio in discovery, lost all three discovery motions that Vizio adequately made discovery. And she goes on and just repeats all of the things they did, making misrepresentations of law and fact to the court, the whack-a-mole expert strategy of just having different experts contradicting each other. But then she turns around in the last few pages of the decision and starts contradicting her own factual findings. I mean, she's completely wrong. Well, she takes care of some of it. She says that with regard to the discovery stuff, you could have and did not file sanctions with regard to discovery, right? She says that, Your Honor, but as a matter of law, in cases that we have cited in our brief, we were not required to take discovery sanctions in order to be entitled to get sanctions under 285 or 1927. I believe this is articulated in the Octane Fitness case, that having a case that rises to the level, and previously in this court's Martek case, that having misconduct that rises to the level of a discovery sanction is not necessary. Although, I will say, their conduct rose to the level of discovery sanction. We did choose at that time not to file a separate motion and seek fees on the discovery. But the entire course of conduct in this litigation shows that they filed this case without any basis, both legally and factually. But the trial court made a finding that the claims were not objectively made. The trial court made that conclusion. But if you look at the trial court's actual findings, she said the claims were utterly unsupported by any evidence. And let's just take for one moment indirect infringement. OPLIS filed a case where first they sought past infringement. And they knew we had no knowledge of the patent. The Vizio had no knowledge of the patent prior to the filing of the case. So, clearly, that's not a proper claim. Even if you assume that they thought televisions were still on sale post-filing, OPLIS counsel admitted repeatedly in the early stages of the case that they knew Vizio was not a manufacturer. They knew Vizio did not design or develop the televisions. That they didn't have any contact with the chipset makers. And that, in any event, the chipset makers who sold chips to the original design manufacturers who made these TVs didn't disclose their proprietary video processing formulas, that those were trade secrets. These are things they knew. So they knew the day they filed the complaint for indirect infringement that Vizio could not possibly have had the scienter to support either inducement of infringement or contributory infringement. They also knew that all of the claims in the patent were method claims. They sued Sears for reselling the televisions. They never alleged. And Sears was indemnified by Vizio. Sears was a customer. They sued Sears claiming that Sears sold the televisions without ever claiming that Sears used them, even though method claims can only be infringed by use. They sued Vizio for making and selling and importing TVs with method claims. And they had no evidence that Vizio used the TVs. Vizio is a reseller of the TVs. So even if you look at the legal arguments, the legal bases, and you don't look at the factual bases that they didn't have, these were pretty frivolous claims right from the start. But then in the course of the litigation, they made no effort to find any evidence that supported infringement. All of their discovery, all of their efforts were devoted to finding more products to accuse and dollars and all kinds of sales information, which the district court ruled, given that these were use claims, was irrelevant, especially because the indirect infringement, there were no televisions on sale post-filing of the complaint. So I think if you look at the entire picture of this case, it was an abuse of discretion for the district court not to award some amount of fees or all of the fees that Vizio asked for. After making all of these findings in several page after page of the extreme litigation misconduct and findings of fact that went directly to the baselessness of the case, what the court said in the later part of the decision is, well, the allegations were reasonable. It was reasonable to base your allegations. That doesn't jive with the facts that she found. And when you add to the equation of the erroneous assessment of the evidence, the fact that the district court at the hearing on this motion basically informed the parties that she was predisposed not to award fees. She said no less than four times during the hearing on attorney's fees, Mr. Nairo, didn't I tell you I just don't award fees? And this was all in response to Raymond Nairo's argument because he was arguing and she'd say, well, let me just stop you. I just don't give attorney's fees. So she was predisposed and reflected an inclination that no matter what findings she was going to make, she was simply not going to award fees. And we're dealing here, you know, and we put this in our brief and we submitted under Rule 28J, a recent decision in the Intellect Wireless case, we're dealing here with some very serious patterns in practice by the Nairo firm in other cases that are identical to the case that is before this court on appeal. But if 285 damages aren't meant to be punitive but rather compensatory, is that really relevant? I mean, it's certainly relevant to making them look like unprofessional bad lawyers, but that's what she said actually expressly. I'm not paraphrasing. That's what she said, unprofessional multiple times. So how is the fact that they were sanctioned in another case relevant to whether they should be here? Well, I think it shows support for what the district court found on litigation misconduct. Under Section 285, litigation misconduct under the Octane Fitness case is independently a ground for finding exceptional case under 285 and for sanctioning a pardon under Section 285. And what is the additional cost that were incurred because of the litigation misconduct that was identified? Well, first of all, from the start, we believed that the cost for the entire case were the result of litigation misconduct. As the court pointed out right from the start, their infringement contentions were just a complete morass. They made no sense at all, no pre-filing investigation. But you could have filed an earlier summary judgment motion, couldn't you have, based on the absence of the selling? Well, there were two things. Well, there were two things on that. First of all, we did file a very early summary judgment motion, just on the patent and based on their own allegations that the patents were indefinite and under Section 101 invalid. Based on testimony they gave through an expert that they later repudiated, the court denied that motion. The first thing we did when we got the infringement contentions was to send a 12-page, single-spaced letter to Opal's counsel saying, we have a problem with this. We don't understand what your basis for infringement is. You have techniques in the prior art, that's all you've asserted. You've got piles and piles of video processing chips that are all different that you're claiming. Can you clarify this? And they came back to us and said, well, we have to get discovery from Vizio. And we said, well, Vizio doesn't have that discovery. They knew all this. They had had a prior case, and that's in the record against Vizio. They knew that Vizio is a reseller and doesn't make the product, doesn't order the chips or deal with the chip makers. But they just insisted that, well, we have to go forward with discovery. That's what resulted in the first discovery motion and the court denying that motion, ordering them to file amended infringement contentions, which they did not do, even when the court ordered it. They didn't do it, but then a month later in June 2013, they filed infringement contentions, again accusing, after they knew they were discontinued now, the same discontinued television and adding four more discontinued televisions, filed by an expert report a month later that made all the same legal infirmities that we mentioned. You're into your rebuttal time, so I assume you want to keep some of it. I do. I want to hear from the other side. Thank you. Thank you. Chief Judge Press, please report. The district court's decision not to award fees was not based on a personal mandate. Rather, the district court correctly understood 285 as remedial and for the purpose of compensating for a bailing party, where it would be grossly unjust to require it to bear its own costs, and as this court said, the aim is not to punish the plaintiff. What the district court did was wait all the evidence after reviewing the entire course of the conduct through the trial. You've got to admit, reading her opinion, you almost feel like you're reading a book and you feel like it's going to come out one way and then suddenly there's the reverse, final chapter. Right. This was pretty extreme, and her findings and her observations with regard to that conduct were pointing in the other direction, right? I'll make two comments to that. First, I want to make very clear during this appeal, OPLUS does not challenge any finding by the district court. So we're not challenging any single thing that she said. So taking that aside, and I agree that they're quite severe. Taking that aside, it makes sense that she would have to spend so much time detailing. Well, then she said if you're not challenging it, and in 835 she says OPLUS unquestionably pursued a vexed and harassing litigation strategy. That's pretty bad stuff. How does that not cost them more money? I mean, maybe they don't get the whole suit, but if she is finding as a matter of fact they pursued a vexed and harassing litigation strategy, how could that not have resulted in them having to spend more money in defense? The reason that that makes sense is because she took a look at all of the evidence. She didn't just take a look at simply the bad things that happened. She also made other specific findings. For example, that this case has been fraught with delays and avoidance tactics to some degree on both sides. And what in the record would support precisely that fact finding? The one point that is specifically referenced by the district court judge on 833 is that Vizio itself did not make the court aware of the fact that the TV's were discontinued. Except that she did in July 24th of 2012 and the case was only transferred to ND Cal in June of 2012. So she did expressly make the court aware. So I don't see how that fact finding actually is supported by the evidence. I would disagree with you, Your Honor. I believe that the statement that is found on 840A141 is somewhat ambiguous. The reason it's ambiguous is because… What statement? Let me get to it. A what? A141. It said it was a reference to the product evolving? Yes, that's right. What about the statement on page 153? I think she also expressly said 153 because that's what I wrote down. On line 29 where she said, but the products have changed because these are TVs from a few years ago. That's correct. The TV models themselves changed. But the key here is that the things that were being accused were models of TVs that incorporated the HQV, the DC Opt-D, and the NDD chip sets. And so, yes, it is true that the model numbers did change. But the belief on the part of OPLOS was that there were continuing to be sold models of televisions that contained such chips even after the lawsuit. Furthermore, if I can direct the court to A5560, in Vizio's own words sometime after this point, they did not point you to the July statement. Rather, they say at A5560, quote, Well, the fact that they informed them in April 2013 didn't mean they also said something in June of 2014, right? Those are not mutually exclusive statements. No, but what I'm suggesting, however, is that there was factual basis for the district court's finding that there was delay by Vizio in providing the information that could have resolved the lawsuit at an earlier point in time. Why isn't the fact that the Supreme Court has now told us that the standard that the trial court was applying in this case was an incorrect one? Why isn't that enough for us to just remand the case back to the trial court to consider the matter anew under the appropriate standards? The reason why I think that would not be appropriate in this case, Your Honor, is because this court has long held before the Supreme Court's decision that the exceptional case question is a two-step process. The first question is to determine whether or not the case is exceptional under 285. And then after making that determination, separately assess whether or not in a substantial judgment the district court believes that the case should have fees awarded. And that question, that second prong, has always been assessed under an abusive discretion standard by this court. So therefore, because the court had already found this case was exceptional under 285 and then started to apply the second prong, there's no change in law that applies to that second prong that we require. But then there's the whole question about the, you know, she found that the allegations when made, that they weren't objectively baseless when made. But under the new standard, under 285, she could take into consideration a totality of circumstances that would include the weakness of the claim. And that's something that she didn't consider because she didn't think she could consider it once she made the non-objectively baseless determination. Well, there's no place, I would submit, in her opinion that says, I cannot award attorneys fees based upon the weakness of the claim. She doesn't say that. What she says is on page 834, since this court deems this case exceptional due to OFOS's litigation misconduct, the court must determine in its discretion if an award of fees is appropriate in the amount of the award. She then went through and did that. But she didn't have the benefit of knowing that she could consider the totality of all of the circumstances. I'm not saying she wouldn't come out the same way, but this court has repeatedly been remanding 285 determinations that were made under the improper standard so the trial court can do it and exercise their discretion under the correct law. Why isn't that the same thing that we should do here? Because in exercising her discretion as to determining whether or not to award fees after finding the case exceptional, she looked at the entire record. So she didn't just have the benefit of high mark or anything else. What she had was the benefit of spending two years with the case, which is exactly why the high mark decision is relevant. It says the district court is best positioned to decide whether a case is exceptional because it lives with the case over a prolonged period of time. She saw all the facts that go into this determination. But what about the four instances where she said, I don't award fees? I mean, one time she said the equivalent of, but you're making me want to. It's kind of like when I turn around to my kids and say, don't make me do this. Why isn't that sort of a problem given that I've just never seen an opinion that from start to finish lays out more unprofessional behavior in every possible dimension from breaching a potential protective order in another case by using confidential information here, where she said they strained credibility to say they didn't do so. Her words, strained credibility, not good. To them calling her a rogue in open court, to the whack-a-mole experts, to the, I mean, gosh, I said to my clerk, you'll get a kick out of this. Just prepare me a list, if you wouldn't, a bullet point of all of her sort of strong adjectives. It's four pages long. I mean, single phase, 12.5 to be clear. I mean, she just thought they flouted every dimension of professional behavior from start to finish, and it got worse as the case moved forward. Given all of that, and then when she says, but I just don't award fees four times, I'm having a little difficulty thinking that she was really open to understanding the notions of what an exceptional case 285 analysis should be. I understand the concern, and I also have to say that, yes, it's true that those adjectives should give us pause. They clearly gave her pause, and still she declined to award fees. What she said, though, specifically on page A505 is, while she doesn't award fees generally, I might in this case. I haven't made my mind up yet. Don't make me turn, stop this car. I never have stopped the car, of course, but don't make me stop this car. I mean, that's kind of, I think she was trying to give him warning, but it didn't get any better after that. It kept going, and that wasn't the last statement either. After that, she said, after that, I don't award fees, no longer with the caveat. Although the records said that she has awarded fees in at least two cases, and she's an extremely experienced district court judge. She has seen this before. She has awarded fees before. She said that her mind was, I haven't made my mind up yet. The last time she awarded fees was 2007. It's now 2015. Isn't it possible that we should accept her statement in this case that I don't award fees? She didn't say I never award fees. She said I don't award fees. Maybe she's adopted a new position post-2007 of no fees anymore. And perhaps it's because she has seen so much bad conduct that she's a little bit uninterested in sanctioning any one person. I don't know, but she laid out an opinion here. A very experienced judge, she's never written an opinion like this in her career. And look at what she articulates. And when you combine that with a very experienced judge saying I don't award fees, I don't know. It's hard to reconcile. I understand. And the reason why I think it makes sense for her to have written so much is because she felt the need, rightfully so, to detail all of the misconduct. If she had written it as a, well, you know, there's some bad stuff here, bad stuff there in the first portion of the section, it would not have strongly supported the 285 finding of exceptional case, which we're not disputing in this point. But once she's gotten past the point of detailing and laying out all of those issues, then she says, well, taking a look at everything, including looking at the fact that the case is fraught with delays and avoidance on tactics on both sides. Yeah, but you haven't given me anything in the record to support that. I've got a reviewer fact finding for clear error. What else, apart from what you've already pointed me to, exhibits Vizio's delays? Vizio's delays besides the, other delays would include, for example, the lack of providing discovery. The other delay. Wait, no, no. She found all of the discovery they failed to provide was because your discovery requests were either improper, already had been rejected, or too confusing and ambiguous to understand. So not one of your discovery requests that they didn't answer did she fault them for not answering. That's quite right. Ultimately in the day, but she also found that the two discovery requests were substantially justified as well. And so there is a balance, I have to say, in the question of whether or not, yes, were they bad, improper, were they ill-timed, as she says. Burdensome, ill-timed, and ambiguous. Right. Something to that effect. Right, exactly. So you're going to fault them for not responding to a discovery request that she herself said were ill-timed, burdensome, and ambiguous. And she didn't fault them for not responding in any way. That's right. And then the second delay would also obviously be the delay between the beginning of the case and the final summary judgment motion that came two years later. Well, hold on, though. They filed a summary judgment motion early on, and you had the expert that came in and said something, which quite reasonably, if I was this judge, would have caused me pause in granting summary judgment. But then it turned out that whole thing wasn't true. Did you loss both of the summary judgment motions that were brought in initially? Well, possibly because of all the lies in them. There is no evidence. The issues of the first two summary judgment motions is a 101 and a 112 motion. And in those instances, there was not allegations that someone specifically lied. And so what happened was there were those two motions, the ones that Visio brought and lost initially. It took quite some time before it finally brought the summary judgment motion that it won on. And so there was a substantial amount of time that occurred between those two events. And to say that, and I think that, again, while you may disagree or this court may say I would have come to a different decision, I think that delay at least supports the court's decision or finding a fact that the case was brought with delays in avoidance tactics to some degree on both sides. Now what about the fact that when they filed summary judgment of non-infringement, the plaintiff's oppositional summary judgment motion didn't even address all the claim limitations, not even all the ones they expressly cite and said they don't infringe. Doesn't that make the whole thing frivolous? Right there. Forget about the whole case. Isn't at least that little component frivolous? If I say summary judgment and here are the five reasons I'm entitled to it and you don't respond to three of those reasons, isn't it a problem when the case keeps going forward at that point? Isn't your response on its face frivolous? Well, first as an initial matter, the district court specifically found no single filing was clearly frivolous or employed with the purpose of— But you also expressly found that in opposition to the summary judgment of non-infringement, they didn't even respond to multiple of the non-infringement contentions. Yes, that's true. That's true. So while I can frivolity of a pleading under those circumstances, that seems like a clear question of law. You can't find in favor of them on summary judgment in that circumstance. It's not possible. Well, if we back up to what they—so if we go to the district court summary judgment opinion— That's what I'm saying. When she said no single filing was frivolous, I'm having a little difficulty understanding how the summary judgment doesn't directly contradict that. Well, the reason being is if you go to the district court summary judgment opinion on non-infringement, you will find that there are three basics for finding non-infringement. One is that there was no information that—or there was no evidence that Vizio used the product in the United States. Second, there was no evidence that Vizio induced others because of that it had any knowledge or that it sold the television sector the purpose of the play. The summary judgment opinion does not go through and detail the whether or not specific elements are—or are not met. It's actually quite—a quite short opinion because there was no—once you get to the point of— The fact that she pointed it out in the attorney's fees context but didn't point it out in that motion, somehow I should just turn a blind eye. They—I looked at the summary judgment. They didn't address multiple of the contentions. I mean, isn't your understanding of the way the legal process works that if you fail to rebut something, it is accepted? I—I— Is that not your understanding of the legal process? That seems appropriate, Your Honor. I would just simply say that she did not find that— No, she did find they failed to rebut them and expressly said so in this opinion. Right, right. But she did not find them to be frivolous. In fact, she did not base her decision on that either in her summary judgment. You tell me. Seriously. I mean, can you stand there and tell me that if you fail to rebut the argument about which you have to rebut or else you lose, that your opposition is not frivolous at that point? Can you honestly forget about what she held or didn't hold? Can you tell me that you would conclude it's not frivolous if you expressly don't address their argument, each one of which on their face caused you to lose? I would not do so, Your Honor. Was it frivolous not to? Was it frivolous to file a pleading under those circumstances under which you cannot prevail? The district court found not. And I'm supporting the district court's position, and I believe that it's appropriate to do so because of the fact that she did, in fact, not base her decision upon that. She based her decision upon several other things. Would I have done what was done in opposition to summary judgment? No. But that was not my decision to make. Respectfully, that was the decision for the district court to make. Okay. Thank you. We've got a few minutes left on rebuttal. Just a few quick things. First of all, at the appendix at page 59 and 60 and throughout, the district court found throughout that Vizio had adequately made discovery that there were no televisions on sale after the filing of the complaint. And notwithstanding a lot of the arguments that have just been made, she did find in the summary judgment opinion that they did not show any use by Vizio of the patented method. I mean, apart from just turning on the television to see if the picture was clear before sending it out to customers. I'd like to address the remand issue because I believe that the Brooks Furniture Standard really did, in fact, her decision not to award fees after finding the case exceptional. She focuses on some things that are no longer the law under octane fitness, such as the objective baselessness and subjective bad faith, always very difficult things to find. And, you know, she did point out, there's a quote, I think it's at page 35 and 36 of the appendix, that, quote, Opalist pursued a weak case in a manner that was overly aggressive, uncooperative, and outside the bounds of professional behavior. I believe this case is the epitome of the octane fitness standard. It stands out from others with respect to both the substantive strength of the party's litigation position based on the facts and the governing law and the unreasonable manner in which the case was litigated. My biggest problem with your position is that you knew even before you put the court through a Markman hearing that the model numbers that were identified in the complaint were not being sold. We told the court that. Well, you didn't. What you showed us is not really saying these model numbers that are identified in the complaint are not being sold. You just said the products have evolved, the products have changed. But you didn't say, we're not selling these. Yes, you've got new products, too, but you never actually said, these specific model numbers, we're not selling anymore. And it wasn't until after the Markman hearing, after you've gone through an earlier summary judgment on different standards, you then finally say, oh, yeah, and by the way. Well, no, it was well before that. I mean, in April 13, we answered interrogatories to the other side. Now, the court may not have known about that, but we answered interrogatories. It didn't change Opelous' behavior. They continued to assert. I mean, when the court asked them to do amended infringement contentions, that was two months after April 13. It was in June 2013, and they still accused the same discontinued television, so it didn't affect their behavior. So why hadn't you filed for summary judgment before that to actually say they were discontinued? Well, I will tell you exactly the problem, Your Honor. It was, we were dealing with a moving target on infringement contentions and a 50-60 problem because opposing counsel insisted, we've got to have discovery. We told them, even as we were objecting and making discovery and they were saying, but these documents don't give us any technical information. We were telling them, well, you know, and you've already admitted that we don't have it. You need to go to the chip makers. So file your motion and let them request discovery on the 50-60, and you could have said you don't need it because these model numbers are not being filled. Well, we were in the process. I mean, there were things happening in the case. There was a discovery motion brought by Opelous. There was a motion that was denied and had them ignore the court's order and turn around and subpoena themselves for sales and product information. Their whole thrust in this case was let's find more products to accuse, let's get some big damages numbers, and let's just skip right over liability, which the court acknowledges in her decision. She really pretty much flat out says that all they were interested in was how big is this case, how big can we make this case, and they sort of forgot to take any discovery relating to infringement. Mediatek offered to give them source code. If they would, you know, sign a confidentiality order, they refused to do it. The other two chip makers are in the U.S., Qualcomm and STMicro. They objected. They wanted a confidentiality order. Opelous, you know, refused to give them one, and we couldn't get the information either. We felt it was their burden to prove infringement under the law and not our burden to prove non-infringement, which they continued to try to shift to us throughout the entire case. We have your argument. We thank Opelous. Thank you. The case is submitted, and that concludes our proceedings this morning. All rise. The Honorable Court is adjourned from day today.